## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

THOMAS SIGITE,          )
                           )
        Plaintiff,      )
                           )
        v.           )     No. 13-3140
                           )
CAROLYN W. COLVIN, Acting   )
Commissioner, Social Security   )
Administration,            )
                           )
        Defendant.   )

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

On January 30, 2015, United States Magistrate Judge Tom Schanzle-Haskins issued a Report and Recommendation (d/e 16) recommending that this Court deny summary judgment in favor of the Plaintiff, Thomas Sigite, and grant summary judgment in favor of Defendant, the Commissioner of Social Security. Plaintiff filed Objections to the Report and Recommendation (d/e 17) and a supplement thereto (d/e 20).  Defendant has filed a response to the objections (d/e 22).

Upon careful review of the record and the pleadings, the Court agrees with the Magistrate Judge that the Administrative Law Judge's (ALJ) decision was supported by substantial evidence. Plaintiff's Objections to the Magistrate Judge's Report and Recommendation (d/e 17) are DENIED. This Court ADOPTS the Magistrate Judge's Report and Recommendation (d/e 16) in full. Plaintiff's Motion for Summary Judgment (d/e 8) is DENIED, and Defendant's Motion for Summary Affirmance (d/e 14) is GRANTED. The decision of the Commissioner is AFFIRMED.

## I. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 72(b)(3), this Court determines "<u>de novo</u> any part of the magistrate judge's disposition that has been properly objected to." Although this Court does not need to conduct a new hearing on the entire matter, the Court must give "fresh consideration to those issues to which specific objections have been made." 12 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 3070.2 (2d ed. 1997); <u>Wasserman v. Purdue Univ. ex rel. Jischke</u>, 431 F.Supp.2d 911, 914 (N.D. Ind. 2006).

If no objection is made, or if only a partial objection is made, the Court reviews the unobjected to portions for clear error. Johnson v. Zema Sys. Corp., 170 F. 3d 734, 739 (7th Cir. 1999). This Court may "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed.R.Civ.P. 72(b)(3).

## II. BACKGROUND

The Court adopts the factual findings made by the Magistrate Judge. To summarize, the ALJ applied the five-step analysis set forth in the Social Security Regulations (20 C.F.R. §§ 404.1520, 416.920) and found: (1) Plaintiff had not engaged in substantial gainful employment since March 29, 2010, the application date (Step 1); (2) Plaintiff suffered from the following severe impairments: status post-myocardial infarction; ischemic heart disease; chronic obstructive pulmonary disease; status post closed head injury; affective disorder; and anxiety disorder (Step 2); (3) Plaintiff's impairments or combination of impairments did not equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Step 3); (4) Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b) except that

he is able to occasionally climb ramps and stairs as well as balance and stoop; he is unable to climb ladders, ropes, or scaffolding; he is unable to work near hazards such as dangerous machinery and unprotected heights; he needs to avoid concentrated exposure to temperature extremes, fumes, odors, dust, gases, and other environmental irritants; he is limited to unskilled work that is routine and repetitive in nature; he is unable to perform work that is measured by production pace, but rather requires work that is goal-oriented or goal-directed; and he is able to have occasional work interaction with coworkers, supervisors, and the general public (Step 4); and (5) Plaintiff could perform a significant number of jobs in the national economy (Step 5). ALJ Decision, R. 15-21.

When the Appeals Council denied Plaintiff's request for review, the decision became the final decision of the Commissioner. On judicial review, Magistrate Judge Schanzle-Haskins found the ALJ's decision supported by substantial evidence and recommended this Court affirm the decision of the Commissioner.

# III. ANALYSIS

Plaintiff raises three issues in his Objections to the Report and Recommendation. First, Plaintiff objects to the Magistrate Judge's conclusion that the ALJ's functional capacity assessment is supported by substantial evidence. Plaintiff argues that both the Magistrate Judge and the ALJ failed to discuss the opinion of Joseph Cools, PhD.

Next, Plaintiff objects to the Magistrate Judge's conclusion that substantial evidence supports the ALJ's decision at Step 5, that Plaintiff can perform other work that exists in significant numbers in the national economy. Finally, Plaintiff objects to the Magistrate Judge's conclusion that substantial evidence supports the ALJ's conclusion that Plaintiff could perform the Cleaner/Housekeeping occupation. Because this Court's review of Plaintiff's objections is <u>de novo</u>, this Court reviews the ALJ's decision. <u>See</u>, <u>e.g.</u>, <u>Welsh v. Halter</u>, 170 F. Supp. 2d 807, 816 (N.D. Ill. 2001) (noting the claimant's objections to the Report and Recommendation and reviewing the ALJ's decision).

When the Appeals Council denies review, the ALJ's decision becomes the final decision of the Commissioner. <u>Getch v. Astrue</u>,

539 F.3d 473, 480 (7th Cir. 2008).  This Court reviews the ALJ's decision to determine whether it is supported by substantial evidence.  See 42 U.S.C. § 405(g); Skinner v. Astrue, 478 F.3d 836, 841 (7th Cir. 2007).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate'" to support the decision.  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  In conducting this review, the Court considers the evidence that was before the ALJ.  Wolfe v. Shalala, 997 F.2d 321, 322 n.3 (7th Cir. 1993) (finding that additional evidence submitted to the Appeals Council could not be used as a basis for finding reversible error where the Appeals Council denied the claimant's request for review based on that evidence).

This Court must accept the ALJ's findings if they are supported by substantial evidence and may not reweigh the evidence or substitute its judgment for that of the ALJ.  Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986).  The Court will not reverse the credibility determinations of the ALJ unless the determinations lack any explanation or support in the record.  Elder v. Astrue, 529 F.3d 408, 413-14 (7th Cir. 2008) ("It is only when the ALJ's

determination lacks any explanation or support that we will declare it to be "patently wrong" . . . and deserving of reversal") (citations and quotations omitted). The ALJ must articulate at least minimally her analysis of all relevant evidence. Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994).

## A. The Residual Functional Capacity Determination Was Supported by Substantial Evidence

Step 4 of the five-step analysis set forth in the Social Security Administration Regulations requires that the claimant not be able to return to his prior work considering his age, education, work experience, and residual functional capacity. The residual functional capacity "is an assessment of what work-related activities the claimant can perform despite [his] limitations." Young v. Barnhart, 362 F.3d 995, 1000 (7th Cir. 2004).

At Step 4, the ALJ determined Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b) except that Plaintiff is able to occasionally climb ramps and stairs as well as balance and stoop; he is unable to climb ladders, ropes, or scaffolding; he is unable to work near hazards such as dangerous machinery and unprotected heights; he needs to

avoid concentrated exposure to temperature extremes, fumes, odors, dust, gases, and other environmental irritants; he is limited to unskilled work that is routine and repetitive in nature; he is unable to perform work that is measured by production pace, but rather requires work that is goal-oriented or goal-directed; and he is able to have occasional work interaction with coworkers, supervisors, and the general public.  R. 18.  Based on this residual functional capacity and the Vocational Expert's testimony, the ALJ found Plaintiff was unable to perform any past relevant work.  R. 19-20.  Magistrate Judge Schanzle-Haskins found that the residual functional capacity determination was supported by substantial evidence.

In determining the residual functional capacity, the ALJ specifically relied on the opinion of medical consultant Donna Hudspeth, PsyD, and others.   See ALJ Decision, R. 19.  Dr. Hudspeth completed a Mental Residual Functional Capacity Assessment for Plaintiff in August 2010.  R. 624.  As is relevant to the issue Plaintiff raises, Dr. Hudspeth found Plaintiff was "not significantly limited" in his "ability to perform activities within a

schedule, maintain regular attendance, and be punctual within customary tolerances." R. 624.

However, the record also contains the Mental Residual Functional Capacity Assessment completed by Dr. Cools, a medical consultant, in April 2009. R. 531. In Section I(B)(7) of the Assessment, Dr. Cools found Plaintiff was "moderately limited" in his "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances." R. 531.

Plaintiff argues that, despite Dr. Cools' assessment that Plaintiff had "moderate limitations" in his ability to perform work within a schedule, to be punctual, and to maintain regular attendance within customary work tolerances, the ALJ imposed no restrictions in the residual functional capacity on Plaintiff's ability to attend work within a schedule and to be punctual within customary tolerances. Objections, p. 5 (d/e 17). Moreover, the Vocational Expert testified at the hearing that missing just one or two days of work per month in the types of jobs the Vocational Expert described would eliminate those jobs. Id.; see also Tr. R. 75. Plaintiff contends that the ALJ's failure to mention or analyze Dr.

Cools' Assessment, which Plaintiff describe as highly pertinent evidence, warrants reversal. The Court disagrees.

"An ALJ is not required to address every piece of evidence in the record but must provide some glimpse into the reasoning behind her decision to deny benefits." <u>Zurawski v. Halter</u>, 245 F.3d 881, 889 (7th Cir. 2001). That is, the ALJ must provide an "'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled." <u>Craft v. Astrue</u>, 539 F.3d 668, 673 (7th Cir. 2008), quoting <u>Young v. Barnhart</u>, 362 F.3d 995, 1002 (7th Cir. 2004). The ALJ must provide an accurate and logical bridge so that the reviewing court can "'assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review.'" <u>Id.</u> Moreover, an ALJ may not ignore the medical opinions of a state agency physician. <u>See</u> Social Security Ruling[1] 96-6p: Policy Interpretation Ruling Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians and

---

[1] "Social Security rulings (SSRs) 'are interpretive rules intended to offer guidance to agency adjudicators.'" <u>Nelson v. Apfel</u>, 201 F.3d 799, 803 (7th Cir. 2000), quoting <u>Lauer v. Apfel</u>, 169 F.3d 489, 492 (7th Cir. 1999). SSRs do not have the force of law, but the SSRs are "binding on all components of the Social Security Administrator.'" <u>Id.</u>, also citing 20 C.F.R. § 402.35(b)(1).

Psychologists at the Administrative Law Judge and Appeals Council Levels of Administrative Review; Medical Equivalence.  However, the failure to mention Dr. Cools' Assessment is subject to harmless-error review and remand is not required if the Court can predict that the result on remand would be the same.  Schomas v. Colvin, 732 F.3d 702, 706 (7th Cir. 2013) (finding harmless error where the ALJ did not explain why he gave controlling weight to one assessment over another); see also Newell v. Astrue, 869 F. Supp. 2d 875, 886 (N.D. Ill. 2012) (finding that, even if the ALJ should have discussed the plaintiff's VA records, the failure to do so was harmless because the notes were not so different from the treatment notes the ALJ did consider to suggest that the ALJ would have assessed the plaintiff's credibility differently).

In this case, the ALJ's residual functional capacity determination was consistent with Dr. Cools' opinion, even though the ALJ did not specifically mention Dr. Cools' opinion.  Therefore, any error was harmless.

The Program Operations Manual System (POMS manual) is a "handbook for internal use by employees in the Social Security Administration."  Parker for Lamon v. Sullivan, 891 F.2d 185, 189

n.4 (7th Cir. 1989), citing <u>Schweiker v. Hansen</u>, 450 U.S. 785, 790 (1981).  The POMS manual explains that the Mental Residual Functional Capacity Assessment, Form SSA-4734-F4-SUP, is the form used to document the consultant's mental residual functional capacity decision.  <u>See</u>  POMS § DI 24510.060 (the POMS manual is available at <u>https://secure.ssa.gov/poms.nsf/home!readform</u>, viewed April 24, 2015).  Although the POMS manual is not legally binding, at least one court has found it persuasive "in establishing how the medical source and the Commissioner are directed to use the form in crafting the" residual functional capacity.  <u>Wade v. Colvin</u>, No. 12 C 8260, 2014 WL 349261, at * 12 (N.D. Ill. Jan. 31, 2014); <u>see</u> <u>also</u> <u>Parker for Lamon</u>, 891 at F.2d at 190 (noting that the POMS manual has no legal force).

The Mental Residual Functional Capacity Assessment consists of three sections.  Section I, titled "Summary Conclusions," is "merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment."  POMS § DI 24510.060 (B)(2)(a).  Section I lists 20 mental function items grouped in four main categories with a series of "checkblocks" where the consultant

can check whether a mental function is "not significantly limited," is "moderately limited," is "markedly limited," that there is "no evidence of limitation," or that the function is "not ratable on available evidence."  <u>Id.</u> at (B)(2)(b).

Section II, titled "Remarks," provides for a discussion of the evidence needed to rate the particular items in Section I.  <u>Id.</u>  at (B)(3).  Section III, titled "Functional Capacity Assessment," is described as the section:

> for recording the mental RFC determination.  It is in this section that the actual mental RFC assessment is recorded, explaining the conditions indicated in section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings.

<u>Id.</u> at (B)(4)(a).

As noted above, Dr. Cools, in Section I, marked as "moderately limited" Plaintiff's "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances."  R. 531.  In Section III, which is the actual mental residual functional capacity assessment, Dr. Cools made a number of conclusions about which mental capacities and functions could or could not be performed in a work setting.  Dr. Cools concluded

that Plaintiff had some limitations due to depressed mood and preoccupation with his medical condition. R. 533. Plaintiff was unable to learn and remember complex instructions but would be able to learn 1-2 step tasks. R. 533. Plaintiff would be able to concentrate sufficiently to perform most simple routine tasks on a sustained basis in a low stress environment. Overall, Dr. Cools concluded "from a psych perspective, the claimant has a severe mental impairment, but does retain the capacity to perform simple routine tasks (1-2 step) with adequate pace and endurance." R. 533. As such, Dr. Cools ultimately concluded that Plaintiff had the capacity to perform certain work involving "simple routine tasks" on a sustained basis. See, e.g., Flynn v. Astrue, 563 F. Supp. 2d 932, 946 n.11 (noting that even though the reviewing physicians found the plaintiff had moderate limitations in her ability to maintain concentration, regular attendance, and punctuality, the reviewing physician also opined that the plaintiff was not disabled and that the plaintiff's limitations were "compatible with simple, routine, unskilled work").

Consequently, Dr. Cools' conclusions in Section III were not inconsistent with his conclusions in Section I. Dr. Cools translated

the moderate limitations identified in Section I by limiting Plaintiff to a job in a low stress environment involving simple, routine tasks. See, e.g., Wade, No. 12 C 8260, 2014 WL 349261, at * 12 (also citing numerous cases in other courts that have held that an ALJ need only look to Section III for the residual functional capacity assessment).

While the ALJ did not specifically mention Dr. Cools' opinion, the ALJ incorporated the limitations noted by Dr. Cools in Section III when she determined Plaintiff's residual functional capacity. The ALJ limited Plaintiff to unskilled work that is routine and repetitive, that is goal-oriented or goal-directed, and that provides for only occasional interaction with coworkers, supervisors, and the general public. R. 18. Moreover, the more recent assessment provided by Dr. Hudspeth—on which the ALJ specifically relied—found Plaintiff was not significantly limited in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. R. 624. Dr. Hudspeth also included in Section III of her assessment that Plaintiff could "respond to the structure of a normal work routine and could make normal work adaptions." R. 626.

In sum, the ALJ included all of the limitations contained in Section III of the form completed by Dr. Cools. Therefore, the ALJ's failure to specifically mention Dr. Cools' Assessment was harmless.

## B. Substantial Evidence Supports the Conclusion that a Significant Number of Jobs Exist in the National Economy

Plaintiff also raises an objection with regard to the ALJ's Step 5 finding. Under Step 5, if a claimant does not have a listed impairment and cannot perform past work, then the Commissioner bears the burden of proving the claimant can perform other work that "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); Overman v. Astrue, 546 F.3d 456, 464 (7th Cir. 2008).

The ALJ concluded that Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. ALJ Decision, R. 21. The ALJ based this conclusion on the Vocational Expert's testimony that a hypothetical individual with Plaintiff's residual functional capacity could perform the requirements of a representative occupation such as Cleaner/Housekeeping . R. 20. The Vocational Expert testified that this occupation numbered 14,035 jobs in the state regional

economy and 371,375 jobs in the national economy.  R. 20; Tr., R. 74.

Plaintiff argues that the ability to perform one occupation—Cleaner/Housekeeping—does not constitute a significant number of jobs when applying the proper framework under Social Security Ruling 83-14 and the newly-issued section of the POMS manual, which clarified the framework analysis required by 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e)(2).

To understand Plaintiff's argument, it is necessary to explain the Medical-Vocational Guideline (20 C.F.R. Part 404, Subpart P, Appendix 2 (a/k/a "the Grid" of "the Grids").  Under the Grid, claimants are designated as "disabled" or "not disabled" depending upon their exertional limitations (sedentary, light, medium, heavy, and very heavy), age, education, and work experience.  See Id. Tables 1, 2, 3.  The Grid only takes into account exertional limitations.  Lawrence v. Astrue, 337 F. App'x 579 (7th Cir. 2009). Exertional limits relate to a person's ability to meet the strength demands of the job, including sitting, standing, walking, lifting, carrying, pushing, and pulling.  See 20 C.F.R. § 404.1569a(b).

The Grid rules are "based on administrative notice of the numbers of jobs in the national economy at the various combinations of strength categories and vocational factors." Skutnik v. Colvin, No. 13 CV 7467, 2015 WL 151386 at *2 n.3 (N.D. Ill. Jan. 12, 2015), citing 20 C.F.R. Pt. 404, Supt. P, App. 2, § 200.00(a). Therefore, "when all factors coincide with the criteria of a rule, the existence of such jobs is established." 20 C.F.R. Pt. 404, Supt. P, App. 2, § 200.00(b). The Grid recognizes the existence of approximately 200 unskilled sedentary occupations and 1,400 unskilled light occupations. See Id. § 201.00(a); §202.00(a) (noting "[a]pproximately 1,600 separate sedentary and light unskilled occupations).

The Grid does not necessarily apply to an individual who has nonexertional limitations. Nonexertional limits include limitations due to nervousness; depression; difficulty maintaining attention or concentrating; difficulty understanding and remembering detailed instructions; difficulty tolerating some physical features of work settings (dust or fumes); limitations in reaching, handling, stooping, climbing, crawling, crouching; and difficulty seeing and hearing. See 20 C.F.R. § 404.1569a(c). When an individual has both

exertional and nonexertional limitations, the ALJ must first determine whether a finding of disability is warranted using the Grids based solely on the exertional limitations. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e)(2). If a finding of disability is not called for when using the Grid solely based on the applicable exertional level (i.e., sedentary, light), the ALJ uses the Grid as a framework and considers all of the relevant factors and principles set forth in the regulations. See 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e)(2); Haynes v. Barnhart, 416 F.3d 621, 628 (7th Cir. 2005)(finding the ALJ appropriately used the Grid as a "framework" and consulted with a vocational expert where the claimant had a combination of exertional and nonexertional limits).

Social Security Ruling 83-14 provides guidance on how an ALJ uses the Grids as a framework for evaluating a combination of exertional and nonexertional limitations. See Social Security Ruling 83-14: Titles II and XVI: Capability to Do Other Work—The Medical-Vocational Rules as a Framework For Evaluating a Combination of Exertional and Nonexertional Impairments. According to Social Security Ruling 83-14, the ALJ must determine how much of the

potential occupation base remains considering the nonexertional

limitations.  <u>Id.</u>  The Social Security Ruling notes:

> A particular additional exertional or nonexertional
> limitation may have very little effect on the range of work
> remaining that an individual can perform.  The person,
> therefore, comes very close to meeting a table rule which
> directs a conclusion of "Not disabled."  On the other
> hand, an additional exertional or nonexertional limitation
> may substantially reduce a range of work to the extent
> that an individual is very close to meeting a table rule
> which directs a conclusion of "Disabled."

<u>Id.</u>  The Ruling further notes that the use of a vocational resource

may be necessary to determine the erosion of the occupational

base.  <u>Id.</u>

    In this case, the ALJ first examined whether a finding of

"disabled" was possible based on the strength limitation alone.  ALJ

Decision R. 20. Under Rule 202.14, a person of Plaintiff's age,

education, and work experience who could perform unskilled light

work is not disabled.  C.F.R. Pt. 404, Subpt. P, App. 2 § 202.14.

(Had Plaintiff been able to perform the full range of unskilled

sedentary work, the Grid would have directed a finding of

"disabled."  20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.14).

    To determine the extent to which Plaintiff's additional

limitations eroded the "light work" occupation base, the ALJ

obtained the assistance of a Vocational Expert.  The ALJ asked the Vocational Expert whether jobs existed in the national economy for an individual with Plaintiff's age, education, work experience, and residual functional capacity.  The Vocational Expert testified that such an individual would be able to perform the requirement of the Cleaner/Housekeeping occupation, of which there were 14,035 jobs in the state regional economy and 371,375 jobs in the national economy.  R. 20; Tr. R. 73-74.

As noted above, Plaintiff first argues that the ability to perform one occupation—Cleaner/Housekeeping—does not constitute a significant number of jobs when the proper framework under Social Security Ruling 83-14 is applied.  Plaintiff notes that he would have been found "disabled" under the Grid had his exertional level been "sedentary."  Only 200 occupations are available under the "sedentary" designation.  However, Plaintiff, who is limited to "light work," has only one occupation available to him—the Cleaner/Housekeeping occupation.  Plaintiff asserts that this demonstrates that his occupational base has been eroded to the extent that there are not a sufficient number of jobs Plaintiff can perform.  According to Plaintiff, he comes closer to meeting the

sedentary work table than the light work table because he can only perform one occupation out of 1,400 light work occupations and 200 sedentary occupations.

The Seventh Circuit rejected a similar argument in in <u>Stanley v. Astrue</u>, 410 F. App'x 974 (7th Cir. 2011) (unpublished).  In <u>Stanley</u>, the ALJ found the plaintiff had the residual functional capacity to perform only unskilled light or sedentary work with two- or three- step instructions.  <u>Stanley</u>, 410 F. App'x at  975. Examining only her exertional impairments, the Medical Vocational Guideline tables would have directed a finding that the plaintiff was not disabled.  <u>Id.</u>  Because of her non-exertional limitations, however, the  ALJ imposed additional restrictions on the type of jobs the plaintiff could perform.  <u>Id.</u>  The ALJ relying on the vocational expert's testimony, determined the plaintiff could work in several occupations that accounted for over 40,000 jobs in Illinois. <u>Id.</u>  The district court, which affirmed the Commissioner's decision, found that the ALJ misstated that the plaintiff could adjust to some of the occupations identified by the vocational expert but held the misstatement was harmless because the other occupations still

available to the plaintiff accounted for over 26,000 light work jobs. Id. at 976.

On appeal to the Seventh Circuit, the plaintiff noted that a hypothetical person of her age, education, and work experience who was limited to sedentary work would be disabled under the Medical-Vocational Guidelines (the Grids). Id. 976-77. The plaintiff argued that this hypothetical person could, despite being disabled, work in 200 occupations, which was more than the number of occupations available to the plaintiff (which appears to have numbered six occupations). Id. at 977. The plaintiff argued that the ALJ should have drawn a comparison between the number of occupations available to a sedentary person (who would be found disabled) and the number of occupations available to the plaintiff and have either found the plaintiff disabled or explained why the comparison did not lead to a finding of disability. Id. at 977.

The Seventh Circuit rejected the argument, finding that the plaintiff incorrectly assumed 200 occupations were available to claimants deemed disabled under the sedentary work table. Id. While 200 occupations was the total number of occupations at the sedentary exertion level, "the range of sedentary occupations

available to someone considered disabled under the Guidelines
(based on additional, job-limiting factors of age, education, and
work experience) is necessarily much narrower." Id., citing 20
C.F.R. Pt. 404, Subpt. P, App. 2 § 201.00.[2]  Consequently, the
Seventh Circuit found that the plaintiff's conclusion that she could
work fewer occupations than claimants deemed disabled was
unsubstantiated.  Id.  The Seventh Circuit also noted that
comparing the number of occupations was misleading because the
light-exertion occupations available to the plaintiff included
substantially more jobs than the sedentary ones.  Id. at n.1. (noting
that the vocational expert testified that "the two light occupations
included a total of 26,686 jobs in Illinois while the seven sedentary
occupations totaled only 13,737").

The Stanley court also noted that where the Guidelines do not
dictate a finding of disabled or nondisabled, an analogy to the
guidelines is just one factor the ALJ should consider, along with
testimony from a vocational expert and other relevant evidence.  Id.
The ALJ in Stanley obtained testimony from a vocational expert who

_____

[2] Section 201.00(a) notes that "85 percent of the unskilled sedentary occupations are
in the machine trades and benchwork occupational categories.

found the plaintiff could perform over 26,000 jobs in several occupations.  Id.  As such, the ALJ permissibly concluded that the number of jobs available was significant.  Id.

Likewise here, the Vocational Expert testified that an individual with the residual functional capacity identified by the ALJ would be able to perform the requirement of the Cleaner/Housekeeping occupation, which numbered 14,035 jobs in the state regional economy and 371,375 jobs in the national economy.  R. 20; Hearing R. 73-74.  The Seventh Circuit has held that this number of jobs is sufficient to meet the Commissioner's burden at Step 5.  See, e.g., Liskowitz v. Astrue, 559 F.3d 736, 743 (7th Cir. 2009) (noting that as few as 174 jobs has been held to be significant and that it "appears to be well-established that 1,000 jobs is a significant number").

Plaintiff also argues that the newly issued POMS manual clarifies the applicability of the framework analysis required by the Grid and Social Security Ruling 83-14.  POMS § DI 25025.020 (C) (effective February 13, 2015).  This new section sets forth a five-part procedure for how an ALJ should consider the impact of the

combination of a claimant's exertional and nonexertional limitations:

1. Begin at the rule that most closely approximates the claimant's exertional limitations; then

2. Determine how the claimant's nonexertional limitation(s) affect that exertional occupational base by considering the information about general requirements for that exertional occupational base found in the Medical-Vocational Quick Reference Guide in DI 25001.001. Additionally, consider the information in:

   DI 25020.005 Physical Limitations,

   DI 25020.010 Mental Limitations, and

   DI 25020.015 Environmental Limitations.

3. Use the rule that comes closest to approximating the claimant's remaining occupational base as a framework for a determination.

4. Explain the basis of your conclusions about how the claimant's nonexertional limitation(s) affects his or her exertional occupational base.

5. If necessary, use a Vocational Specialist's advice to help you make this determination.

Id. According to Plaintiff, if the ALJ had applied the new POMS section, Plaintiff would have been found disabled.

However, as noted above, the POMS manual is not legally binding. Parker for Lamon, 891 F.2d at 190. Moreover, this section

of POMS was not effective until February 13, 2015—three years after the ALJ's decision. The ALJ followed the framework identified in Social Security Ruling 83-14. In any event, even if this new POMS manual section applied, the ALJ essentially followed the procedure contained therein. Therefore, the Court agrees with the Magistrate Judge that substantial evidence supports the ALJ's conclusion that Plaintiff could perform a significant number of jobs in the national economy (14,035 jobs in the state regional economy and 371,375 jobs in the national economy).

The Court notes that the Seventh Circuit has criticized ALJs who credit a vocational expert's testimony about the number of jobs a claimant could perform when the vocational expert does not explain the source of the expert's estimate. See Voigt v. Colvin, No. 14-2302, 2015 WL 1346192, at * 7 (7th Cir. Mar. 26, 2015) ("There is no official source of number of jobs for each job classification in the Dictionary of Occupational Titles, and while there are unofficial estimates of jobs in some categories, the vocational experts do not in general . . . indicate what those data sources are or vouch for their accuracy."). In this case, the Vocational Expert testified that his testimony was consistent with the Dictionary of Occupational

Titles.  Tr. R. at 82.  The Vocational Expert also stated that when he testified on matters not strictly included in the Dictionary of Occupational Titles, his testimony was based on personal experience.  Id.  In any event, Plaintiff does not raise this argument so the Court will not address it further.

**C. Substantial Evidence Supports the ALJ's Conclusion that Plaintiff Can Perform the Cleaner/Housekeeping Occupation**

Plaintiff last argues that he cannot perform the one occupation the ALJ found Plaintiff capable of performing.  Plaintiff argues that, while the Cleaner/Housekeeping occupation is classified as "light," the occupation cannot be performed if standing and walking are limited to 6 out of 8 hours in a workday.

The ALJ found that Plaintiff was limited to performing light work as defined in 20 C.F.R. § 416.967(b) with certain exceptions not applicable to this argument.  R. 18.  Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of

performing a full or wide range of light work, you must
have the ability to do substantially all of these activities.

20 C.F.R. § 416.967(b).  Social Security Ruling 83-10 further

clarifies that the "full range of light work requires standing or

walking, off and on, for a total of approximately 6 hours of an 8-

hour workday."  Social Security Ruling 83-10, Titles II and XVI:

Determining Capability to Do Other Work –The Medical Vocational

Rules of Appendix 2.  Therefore, the ALJ's determination that

Plaintiff was limited to light work was consistent with the

Assessments finding that Plaintiff could stand or walk 6 hours in an

8 hour day. [3]

Plaintiff asserts the Vocational Expert testified that a person

limited to walking or standing 6 hours out of 8 hours in a day,

lifting 20 pounds rarely, lifting 10 to 15 pounds occasionally, and

lifting less than 10 pounds frequently could not perform the

occupation of Cleaner/Housekeeping.  Objections, p. 5-6 (d/e 17).

That is not entirely correct.

_____

[3] The Physical Residual Functional Capacity Assessment forms completed by
Dr. Marion Panepinto and Dr. Frank Jimenez limited Plaintiff to standing
and/or walking for a total of "about 6 hours in an 8-hour workday." R. 524,
599.  This was the least restrictive limitation they could have chosen on the
Assessment form short of finding Plaintiff had no exertional limitations at all
with regard to lifting/carrying, standing/walking, sitting, pushing/pulling).

The ALJ asked the Vocational Expert to consider a person limited to light exertion work with the additional limitations of only occasionally climbing ramps and stairs, balancing, stooping; no climbing of ropes, ladders, or scaffolds; no work exposure to hazards; and avoiding concentrated exposure to temperature extremes, fumes, odors, dust, gases, and other environmental irritants. Tr. R. 73. This hypothetical person must also be limited to unskilled work that is routine and repetitive in nature with only occasional work interaction with coworkers and supervisors. Id. The ALJ asked the Vocational Expert if such person could perform past work. Id. see also ALJ Decision R. 20 (noting the vocational expert identified Plaintiff's past relevant work as construction worker). The Vocational Expert testified that he could not. The ALJ then asked the Vocational Expert if there were other jobs the person could perform (considering age, education, and work history of Plaintiff). The Vocational Expert testified that such jobs existed. Id. at 74. When the ALJ added an additional limitation that the work be goal-directed or goal-oriented rather than production paced, the Vocational Expert testified that the only occupation that remained was the Cleaner/Housekeeping occupation. R. 74, 75.

Plaintiff's attorney asked the Vocational Expert the following:

> [A]ssume hypothetical [sic] an individual who's limited to standing and walking about six hours out of a day and no more. The person can sit the remainder of the workday. The person can lift from table height 20 pounds rarely, 10 to 15 pounds occasionally, and can carry 10 pounds or less frequently – or excuse me – can carry 10 pounds or less and carrying is limited to occasional.

R. 76-77. Plaintiff's attorney also included in the hypothetical limitations in interaction with the public, co-workers, and supervisors and limitation to a goal oriented job. R. 77. The attorney asked the Vocational Expert whether any occupations would still be available to the individual. R. 77. The Vocational Expert testified that the only goal-oriented job was the Cleaner/Housekeeping job, which was not consistent with the physical limitations described. R. 77. Plaintiff appears to suggest that the addition of the limitation that the individual could stand or walk no more than 6 hours in an 8-hour workday was what precluded such an individual from being able to perform the Cleaner/Housekeeping occupation.

However, the difference between the ALJ's hypothetical and the attorney's hypothetical is that the ALJ limited the individual to

"light work" while the attorney included limitations that are not consistent with "light work."  As noted above, Social Security Ruling 83-10 indicates that the full range of light work requires standing or walking for approximately 6 hours of an 8-hour workday.  The portion of the attorney's hypothetical that differed from the standard for "light work" was the limitation on carrying objects weighing 10 pounds or less to "occasional."  Light work is defined as requiring <u>frequent</u> lifting or carrying of objects weighing up to 10 pounds.  20 C.F.R. § 416.967(b).  Therefore, it was that limitation on lifting and carrying – not the limitation that the individual could only stand or walk 6 hours in an 8-hour day—that caused the Vocational Expert to testify that the Cleaner/Housekeeping occupation was excluded.

Plaintiff also argues that the description of the Cleaner/Housekeeping occupation in the Dictionary of Occupational Titles (DOT) shows that the occupation cannot be performed if standing and walking is limited to 6 hours in an 8 hour day.  Plaintiff argues that not one function is performed in a seated posture.

The DOT defines the Cleaner/Housekeeping occupation as having a strength rating of "light." DOT § 323.687-104 (the DOT is located at www.occupationalinfo.org, viewed April 24, 2015). The DOT defines "light" as including jobs that require walking and standing to a significant degree. DOT Appendix C, § IV(c). The Vocational Expert identified Cleaner/Housekeeping as an occupation a hypothetical individual with Plaintiff's residual functional capacity (including the ability to perform light exertion work) could perform. R. 73-74. Therefore, substantial evidence supports the ALJ's determination that Plaintiff could perform the Cleaner/Housekeeping occupation.

That being said, the description of occupations in the DOT may be outdated and inaccurate. See Browning v. Colvin, 66 F.3d 702 (7th Cir. 2014). The Court questions how the Cleaner/Housekeeping position can be classified as a "light work" position. Regardless, the Court has reviewed the unobjected to portions of the Magistrate Judge's decision for clear error and finds no clear error.

# IV. CONCLUSION

For the reasons stated, Plaintiff's Objections to the Magistrate Judge's Report and Recommendation (d/e 17) are DENIED. This Court ADOPTS the Magistrate Judge's Report and Recommendation (d/e 16) in full. Plaintiff's Motion for Summary Judgment (d/e 8) is DENIED and Defendant's Motion for Summary Affirmance (d/e 14) is GRANTED. The decision of the Commissioner is AFFIRMED.

ENTER: April 24, 2015

FOR THE COURT:

      s/Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE